IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 20-cv-00355-PAB

INGRID J. CLAUDE,

       Plaintiff,

v.

ANDREW M. SAUL, Commissioner of Social Security,

       Defendant.
_____

**ORDER**
_____

This matter comes before the Court on the Complaint [Docket No. 1] filed by plaintiff Ingrid Claude on February 11, 2020.  Plaintiff seeks review of the final decision of the defendant (the "Commissioner") denying her claim for disability insurance benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq.*  The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).[1]

## I.  BACKGROUND

On December 1, 2017, plaintiff applied for social security benefits under Title II of the Act.  R. at 15.  Plaintiff alleged a disability onset date of October 31, 2015.  *Id.*  After her claims were initially denied on January 17, 2018, plaintiff requested a hearing before an administrative law judge ("ALJ"), which was held on August 14, 2019.  *Id.*

On October 9, 2019, the ALJ issued a decision denying plaintiff's claim.  R. at

_____

[1] The Court has determined that it can resolve the issues presented in this matter without the need for oral argument.

12.  The ALJ found that plaintiff had not engaged in substantial gainful activity since the disability onset date and had the following severe impairments: migraine; right knee liposarcoma; post-traumatic stress disorder; depression; fibromyalgia; anxiety; cervical degenerative disc disease; and left ankle ligament tear.  R. at 17.  The ALJ concluded that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525 or 404.1526.  R. at 18.  Ultimately, the ALJ concluded that plaintiff had the residual functional capacity ("RFC") to perform light work with the following qualifications:

> she can frequently climb ramps or stairs, occasionally climb ladders, ropes, or scaffolds, and frequently stoop or crouch; is able to understand, remember, and carry out simple, routine, and repetitive tasks involving only simple work-related decisions; and can have only occasional interaction with the public, coworkers, and supervisors.

R. at 21.  The ALJ determined that plaintiff was unable to perform any past relevant work, R. at 26, but found that other jobs existed in significant numbers in the national economy that plaintiff could perform.  R. at 27-28.

On December 9, 2019, the Appeals Council denied plaintiff's request for review. R. at 1.  Accordingly, the ALJ's decision became the final decision of the Commissioner.  *Id.*

## II.  STANDARD OF REVIEW

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole.  *See Angel*

*v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). The district court may not reverse an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence is more than a mere scintilla, and means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation and quotation omitted). "The threshold for such evidentiary sufficiency is not high." *Id.* Nevertheless, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The district court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

## III. THE FIVE-STEP EVALUATION PROCESS

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(1)-(2). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only

3

> unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006).  The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled.  20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).  The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. § 404.1520(b)-(f)).  A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis.  *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability.  However, "[i]f the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and work experience."  *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005); *see also Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987).  While the claimant has the initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform

himself about facts relevant to his decision and to learn the claimant's own version of those facts." *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

## IV. DISCUSSION

Plaintiff raises two objections to the ALJ's decision: (1) the ALJ failed to properly determine plaintiff's RFC and (2) the Commissioner did not meet his burden at Step Five. *See* Docket No. 12 at 5.

### A.  RFC Determination

Plaintiff argues that the ALJ failed to properly determine plaintiff's RFC. *See id.* at 15.  The Court finds that there is substantial evidence in the record for the ALJ's RFC determination.

The ALJ first determined that plaintiff's medical impairments could cause the alleged symptoms, just not at the intensity, persistence, or limiting effects that plaintiff alleged.  R. at 25.  Specifically, ALJ found that plaintiff conducted normal activities of daily living, such as taking care of herself and son, light cleaning, and driving a car.  *Id.* Plaintiff worked part time and was studying for a business degree online for several hours each week.  *Id.*  Although plaintiff had a history of mental health issues, "she had no psychiatric hospitalization and mostly normal mental status exams."  *Id.*  Regarding plaintiff's physical health, the ALJ concluded that her "cervical spine imaging was mostly normal other than mild reversal of the normal curvature," and that she could ambulate independently.  *Id.*  Medication helped with plaintiff's migraines.  *Id.*

Plaintiff points to various parts of the record to support her argument that the ALJ's RFC determination is improper.  *See* Docket No. 12 at 16-33.  The issue,

however, is that through these citations to the record, plaintiff essentially asks the Court to reweigh the evidence. *See id.* at 21 ("It seems to me that if one is to hold that the [p]laintiff has the greatest capacity to be on her feet for 6 hours of an 8 hour workday . . . . impairments compromising weight-bearing joints . . . would have more than a slight impact on the 'basis of work activity' of walking and standing."); *see also id.* at 23 ("Did tronchanteric bursitis just fade away?"); *id.* at 32 (stating that it is a "conundrum" why the plaintiff was not diagnosed with Gulf War Syndrome). But, the Court is not permitted to "reweigh the evidence or retry the case." *Flaherty*, 515 F.3d at 1070. Rather, the Court must examine the record to determine whether substantial evidence supports the ALJ's decision. *Id.* "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*.

The record demonstrates that the ALJ was justified in her RFC determination and that there is substantial evidence to support it. Numerous reports show that plaintiff's range of motion, gait, and strength were normal. *See, e.g.*, R. at 361 (noting "normal range of motion" in plaintiff's back, no musculoskeletal swelling ); R. at 889-90 (finding "5/5" strength in elbow, wrist, fingers, normal range of motion, no pain on "weight bearing," and could perform repetitive tasks); R. at 1079-80 (stating that plaintiff had "5/5" strength on a range of upper extremities with mild reversal of the cervical spine); R. at 3258 (noting that plaintiff "arose from the chair without difficulty" and "did not seem to have pain while ambulating"); R. at 3264 ("No gross [muscular] abnormalities noted."); R. at 3424 (finding "no obvious [musculoskeletal] deformities"

and "no cyanosis, no clubbing, [and] no edema" in plaintiff's extremities).  Additionally,

regarding plaintiff's mental health, exams over a long period of time consistently

concluded that, although plaintiff was depressed, her mental health was otherwise

normal.  *See* R. at 857 (finding somber affect, depressed mood, but clear speech, and

coherent and goal oriented thought process, no illusions, delusions, or suicidal

ideation); R. at 932 (noting plaintiff had depression); R. at 949 (stating that plaintiff had

depressed affect, direct eye contact, neat and clean hygiene, cooperative behavior,

logical and circumstantial thought process, and was oriented to person, place, and

time); R. at 1017 (noting that plaintiff was "appropriately groomed, ambulatory, [and]

[had] good eye contact," as well as oriented to "person, place, date, and time," had a

"logical [and] goal directed" thought process, but a "dysthmic" mood); R. at 3435

(finding a "dysphoric and irritable mood" and "restricted" affect, but had "no delusions,

preoccupations, obsessions, compulsions, or suicidal/homicidal ideations . . . [or] overt

psychotic symptoms or evidence of thought disorder").

       The ALJ's determination that plaintiff could do light work with some limitations,

plus only limited interactions with the public and co-workers, R. at 21, is supported by

the substantial evidence in the record.  Plaintiff argues that the ALJ did not consider

plaintiff's pain, PTSD, or non-severe impairments.  *See* Docket No. 12 at 20.  But, in

actuality, plaintiff is not arguing that the ALJ did not consider these issues, just that

plaintiff disagrees with the ALJ's conclusions.  *See id.* at 22 ("The ALJ's reasons for

weighing the impact of all of these arguably crucial impairments affecting standing and

walking is somewhat dubious.").  But the question is not whether the plaintiff would

have weighed the evidence differently, but whether the ALJ considered the evidence

and whether the ALJ's conclusions were supported by substantial evidence in the record.  The ALJ considered plaintiff's other impairments.  *See, e.g.*, R. at 23 (analyzing plaintiff's PTSD and mental exams); R. at 24 (noting that migraines improved with medication); *id.* (addressing plaintiff's foot pain).  Thus, plaintiff's argument that the ALJ did not consider these issues is unpersuasive.  The ALJ did consider them and, as already stated, the ALJ's RFC determination was supported by substantial evidence in the record.

Regarding plaintiff's activities of daily living, the ALJ examined plaintiff's own Function Report that indicates she cares for her son, takes care of pets, prepares some meals, can do household chores, drives a car, shops in stores, and only needs someone to accompany her "sometimes."  R. at 204-08.  Plaintiff argues that she has care givers, she only prepares quick meals, and that her son helps her with chores, among other things.  *See* Docket No. 12 at 31.  But that does not contradict the ALJ's finding that plaintiff is able to engage in several activities of daily living.  The ALJ noted that plaintiff's claims of "intensity, persistence, and limiting effects of her symptoms" were not consistent with either her activities of daily living or the objective medical evidence in the record.  R. at 25.  The weighing of evidence and determination of credibility is left to the ALJ, so long as the ALJ follows the appropriate legal framework. *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).  Based on plaintiff's own report, which the ALJ relied on, there is substantial evidence to support the ALJ's conclusion on plaintiff's activities of daily living.[2]

_____

[2] Plaintiff argues that it is a "conundrum" that plaintiff was not diagnosed with "Gulf War Syndrome."  Docket No. 12 at 32.  As plaintiff herself states, she was never

### B.  Step Five

Plaintiff argues that, because "no hypothetical contained all of the claimant's impairments borne out by the record," the ALJ was not permitted to rely on the vocational expert's responses to the ALJ's questioning.  *See* Docket No. 12 at 35. This argument is a reformulation of her RFC contention, arguing that the available jobs did not include her other impairments that should have been included in the RFC. In other words, plaintiff argues that the step five analysis is flawed because the RFC analysis is flawed.

At step five, the Commissioner must demonstrate that there are alternative jobs in the national or regional economy in significant numbers that are within the claimant's RFC.  42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 416.966(a)-(b).  The Commissioner does not need to provide additional medical evidence at step five, *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004), but does need to consider the level of pain, "even if not disabling," when determining what jobs are available to the claimant.  *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993).

The Court finds that the Commissioner met his burden.  This is not a case where the Commissioner "ignored completely" plaintiff's pain.  *Id.* at 1491.  Or one where a vocational expert should have been called but was not.  *Id.* at 1490.  Indeed, the ALJ specifically noted that, if plaintiff had the capacity to "perform the full range of light work," a finding of "not disabled" would be automatically required by Medical-Vocational Rule 202.22.  R. at 27.  But plaintiff did not have such a RFC, and the ALJ stated that

---

diagnosed with this syndrome.  *Id.*  If plaintiff is implying that the ALJ somehow should have diagnosed plaintiff, that is not the ALJ's role.

plaintiff's "ability to perform all of substantially all the requirements of this level of work has been impeded by additional limitations." *Id.* The ALJ asked the vocational expert to consider a claimant who could only occasionally climb and could only interact with the public, colleagues, and supervisors on a limited basis. R. at 56. The ALJ also asked if there were jobs at the sedentary rather than light exertional level. R. at 57. While the ALJ could have been more explicit that she was considering plaintiff's pain, PTSD, and mental health conditions, the limitations and hypothetical questions proposed to the vocational expert demonstrate that the ALJ was considering these conditions in determining whether jobs existed in the national economy.

Plaintiff's citations to *Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995), *Trimiar v. Sullivan*, 966 F.2d 1326, 1333 (10th Cir. 1992), and *Hargis v. Sullivan*, 945 F.2d 1482 (10th Cir. 1991), do not change the Court's conclusion. In *Hargis*, the ALJ failed to "recognize any mental impairment affecting the claimant's ability to perform sedentary work," 945 F.2d at 1492, but here the ALJ's hypothetical questions accounted for plaintiff's "additional limitations." R. at 27. A similar situation occurred in *Evans*, where the ALJ failed to present "any limitation" in regard to the claimant's hand limitations. *See* 55 F.3d at 532. And in *Trimiar*, the Tenth Circuit was discussing the purpose of vocational experts and the use of the vocational grids. *See* 966 F.3d at 1333. Specifically, if the grids find a claimant not disabled, the court concluded that an ALJ may not rely on the grids to determine what work the claimant is capable of. *Id.* Rather, the ALJ "must resort to testimony from a vocational expert that a significant number of jobs exist in the national economy which the claimant can perform." *Id.*

None of these cases, however, stand for the proposition that the ALJ must ask an endless number hypothetical questions to ascertain the available jobs.  And plaintiff fails to cite to a single case where, after the RFC was found to be supported by substantial evidence, the ALJ's questions pursuant to that RFC was deficient because the ALJ did not ask even more specific questions regarding each, non-severe impairment.  *See Qualls*, 206 F.3d at 1373 (rejecting plaintiff's argument "that the ALJ's hypothetical questions to the [vocational expert] did not recite all of plaintiff's impairments" because the questions asked "included all the limitations the ALJ ultimately included in his RFC assessment").

In any event, plaintiff does not argue that the job numbers are insignificant.  Both the Tenth Circuit and another court in this district have declined to find that the Commissioner has failed to meet his burden when the plaintiff has not alleged that alternative jobs do not exist in significant numbers.  *See Botello v. Astrue*, 376 Fed. App'x 847, 850-51 (10th Cir. 2010); *Ghini v. Colvin*, 82 F. Supp. 3d 1224, 1234-35 (D. Colo. 2015).  Here, the plaintiff does nothing more than argue that the RFC was incorrect, which the Court already affirmed as being supported by substantial evidence. The numbers are "more than sufficient" to meet the Commissioner's burden at step five. *Ghini*, 82 F. Supp. 3d at 1234.

## V.  CONCLUSION

For these reasons, it is

**ORDERED** that the decision of the Commissioner that plaintiff is not disabled is **AFFIRMED**.  It is further

**ORDERED** that this case is closed.

DATED March 30, 2021.

BY THE COURT:

_____
PHILIP A. BRIMMER
Chief United States District Judge

12